UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

        MCLEAN WINE CO., INC.,

             Debtor.

_____/

Case No.: 06-50873-wsd
Chapter 7
Hon. Walter Shapero

## OPINION REGARDING (1) THE FIRST AND FINAL FEE APPLICATION OF KILPATRICK & ASSOCIATES, P.C.; (2) THE CHAPTER 7 TRUSTEE'S MOTION TO SURCHARGE PROPERTY PURSUANT TO § 506(C); AND (3) CREDITORS JAMES AND SHIRLEY MCLEAN'S MOTION FOR SANCTIONS

Three matters are before the Court. The first is Kilpatrick & Associates, P.C.'s, counsel for the Chapter 7 Trustee, first and final fee application. The second is the Chapter 7 Trustee's motion to surcharge certain property pursuant to 11 U.S.C. § 506(c). Finally, creditors James and Shirley McLean motion for sanctions against the Chapter 7 Trustee and the Trustee's counsel pursuant to Federal Rule of Bankruptcy Procedure 9011. The Court held several hearings on these matters and took them all under advisement. For the reasons the follow, the Court (1) will allow in part and disallow in part the fee application; (2) denies the surcharge motion; (3) and denies the motion for sanctions.

## I. BACKGROUND

Although this case has been with this Court for some time, a recitation of the events leading up to the instant motions is required. Debtor McLean Wine Co., Inc. filed its voluntary Chapter 11 petition on July 23, 2004. Debtor proposed a plan of reorganization and the Court subsequently confirmed the plan on September 9, 2005. On July 10, 2006, the U.S. Trustee filed a motion to convert Debtor's case to one under Chapter 7. This Court entered an order granting the motion to convert on August 21, 2006 (Docket No. 240). On August 22, 2006, Trustee Karen Evangelista was appointed as the Chapter 7 Trustee ("Trustee"). Following an ex parte application to employ Kilpatrick & Associates, P.C.'s ("Applicant") and with the U.S. Trustee's concurrence, the Court entered an Order on August 31, 2006, granting the application (Docket No. 248).

1

Applicant filed its First and Final Fee Application (the "Application") pursuant to 11 U.S.C. §§ 330 and 331 on August 6, 2010 (Docket No. 456). Applicant seeks fees of $109,833.50 and costs of $3,793.56, for a total of $113,627.06. These fees and costs are sought for post-conversion services rendered by Applicant from August 30, 2006, through August 5, 2010. Creditors James and Shirley McLean ("Creditors") filed an objection to Applicant's Application on August 27, 2010 (Docket No. 460). The Court held a hearing on the Application on September 30, 2010, following which it took the matter under advisement. The Trustee, per this Court's direction, filed a Summary of Estimated Distribution ("Distribution Summary") on October 14, 2010.

On February 9, 2011, while the Application was under advisement, the Trustee filed a Motion for Authority to Surcharge Property in which James McLean and Shirley McLean Hold Secured Claims (the "Surcharge Motion") (Docket No. 473). The Creditors objected to the motion on February 28, 2011 (Docket No. 474), and the Court held a hearing on the motion on March 24, 2011. After hearing argument on the motion, the Court took that matter under advisement as well.

On March 25, 2011, the day after the hearing on the Surcharge Motion, the Creditors filed a Motion for Sanctions Against Trustee and Trustee's Counsel (the "Sanctions Motion") (Docket No. 480). The Trustee objected to the motion on April 6, 2011 (Docket No. 481). Following a hearing on the Sanctions Motion, the Court took the matter under advisement.

## II. Statement of Jurisdiction

This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(c), 28 U.S.C. § 157, and E.D. Mich. LR 83.50. These are core proceedings pursuant to § 157(b)(2)(A) and (O).

## III. Facts

Applicant's Application states that it has expended a total of 513.10 hours providing services to the Trustee between August 30, 2006, and August 5, 2010. While the Application includes a summary of the total hours worked by each attorney, the Application does not associate 222.10 of the 513.10 hours with any specific attorney. In conformance with Local Bankruptcy Rule 2016-1 (E.D. Mich), Applicant's Application provides a narrative summary of the nature of the services performed and the results achieved from its services. Based on the summary and for ease of discussion, the Court groups Applicant's description of the services it provided to the Trustee into

broad categories: (1) General and Administrative fees; (2) Asset Analysis and Recovery; (3) the KHN adversary proceeding; (4) the Stetson Litigation; and (5) other adversary proceedings.

With respect to the first category, the Application details the general administrative services Applicant performed on behalf of the Trustee in responding to inquiries from various creditors and parties in interest as well as making initial investigations. Applicant also filed ex parte applications to employ various professionals, such as itself, an auctioneer (Winebid.com), a real estate broker, and an accountant (Waxenburg & Mueller, PLLC). Applicant also prepared a motion to auction of the Debtor's real property and a fee application for the accountant. Also included in this category are "the fees and costs incurred by [Applicant] in obtaining employment and those incurred as Counsel for the Trustee." (Applicant's Application, p. 2). Applicant requests fees of $7,772.50 and costs of $591.28 in this category.

Regarding the second category, Asset Analysis and Recovery, the Application details Applicant's efforts to secure authority for the Trustee to wind down the Debtor's affairs and to assist the Trustee in selling Debtor's wine inventory, real property, and vehicles. As to the wine inventory, Applicant negotiated an eventual settlement with the Creditors regarding their claims to Debtor's assets. The settlement resulted in the Creditors accepting an allowed secured claim of $301,000 and a distribution of $125,000 in partial satisfaction of that claim, an agreement that the Creditors would assist in facilitating the inventory or and sale of the wine, a negotiated surcharge of $44,970.85 against the Creditors' secured claim, and other agreements with Dr. Melody Larkin regarding her claim. In addition, the settlement provided that the Debtor would have an allowed claim of $6,000 in the Professional Chefs, Inc. bankruptcy case. The Trustee eventually sold the Debtor's wine inventory at an auction that yielded $315,582.68 for the Debtor's estate. Applicant, after efforts to auction the Debtor's real property were unsuccessful, also negotiated with the Creditors for them to credit bid a total of $43,666.08 (after reductions for taxes due on the real property) for the property and a vehicle owned by Debtor. Applicant seeks fees of $33,129.50 and costs of $800.57 associated with this category.

Turning next to the KHN adversary proceeding (Adv. Pro. No. 06-5828), Applicant's services included, but were not limited to, filing the complaint, seeking a default judgment, obtaining an adjournment of the trial, seeking to have certain subpoenas quashed, and representing the Trustee at the three day trial. Applicant also filed a post-trial Finding of Facts and Conclusions

3

of Law. The adversary proceeding sought damages against KHN Enterprises, LLC's for its alleged breach of the Management Agreement between KHN and the Chapter 11 Trustee through which KHN agreed to manage the Debtor. KHN counter-claimed for the return of a $5,000.00 deposit given to the Chapter 11 Trustee pursuant to the management agreement. The Court entered its Opinion on December 1, 2009, finding no cause of action on the Trustee's claims and granting KHN's counter-claim (Docket No. 89; No. 06-5828). The Court entered an Order of Judgment for Defendant KHN on January 7, 2010 (Docket No. 91; No. 06-5828). For its services provided in this category, Applicant seeks fees of $27,968.50 and costs of $800.57.

The next category is the Stetson Litigation. This category comprises Applicant's services in both this bankruptcy case as well as the separate Chapter 13 bankruptcy case of Joseph P. Stetson and Rosemary A. Stetson (Case no. 07-22558). Applicant's services included obtaining a 2004 Exam of Mr. Stetson, seeking to vacate an earlier settlement agreement entered into between Mr. Stetson and the Debtor's Chapter 11 Unsecured Creditors Committee, and filing a proof of claim in the Stetsons' case. Applicant also commenced a non-dischargeability action against Mr. Stetson and defended against a motion for sanctions (AP No. 07-2121, Case No. 07-22558), commenced a fraudulent conveyance action against Mr. Stetson and Mr. Frederick Stetson seeking the return of $9,000 of Debtor's funds alleged used by the defendants to purchase, maintain, and insure a pick-up truck (AP No. 07-6238, Case No. 06-50873), and ultimately negotiated a global settlement of all claims and issues involving the Stetsons. That settlement entitled the Trustee to an allowed priority claim of $5,000 in the Stetsons' case as well as dismissed all claims in the adversary proceedings. Applicant seeks fees of $31,507.00 and costs of $800.57 in connection with its services provided to the Trustee in this category.

The final category includes numerous other adversary proceedings commenced by Applicant on behalf of the Trustee. These proceedings were preference actions brought against various entities. Applicant also sent demand letters to other creditors and settled with one creditor without having to initiate an adversary proceeding. By the Court's calculation, these adversary proceedings and demand letters sought the return of a total of $132,227.43. Many of the proceedings were unsuccessful due to the creditors' assertion of a statute of limitations defense. However, Applicant's services resulted in a total of $42,307 being returned to Debtor's estate. Applicant seeks fees of $9,456.00 and costs of $800.57 for its services related to these adversary proceedings.

4

The Creditors object to Applicant's Application generally on the grounds that the fees "are excessive , unreasonable, and unwarranted" as well as contending that "much of the work performed did not benefit the estate . . . ." (Creditors' Objection, p. 1, ¶ 2). Specifically, the Creditors argued the Trustee's pursuit of the KHN adversary proceeding "was unreasonable" because KHN lacked assets and because KHN's principal could not be held personally liable. (*Id*., ¶ 2). The Creditors also take issue with Applicant's services provided in connection with the Stetson litigation because Applicant billed over $30,000 but only obtained a $5,000 benefit for the estate. The Creditors further question Applicant's fees for its services in the other adversary proceeding. They point to one adversary proceeding brought against the Darioush Khaledi Winery (AP No. 07-6247) where Applicant's fees amounted to "approximately $3,500" but "the gross recovery was only $2,000." (Creditors' Objection, p. 2, ¶ 6). Finally, the Creditors contended the Application is "disorganized and misleading" because time entries do not match up and the Application's fee totals do not match the fees itemized in the Application's exhibits. (*Id*., ¶ 8).

Applicant's Response to the Creditors' Objection contends that the Creditors "urged" the Trustee to pursue the KHN and Stetson litigations. (Applicant's Response, p. 5, ¶ 19). Applicant further alleges it, along with the Trustee, "consulted with" the Creditors and that the Creditors offered "further arguments" for inclusion in Applicant's post-trial briefing. In addition, Applicant argues the reason many of the preference actions were unsuccessful was due to the Chapter 11 Trustee's failure to timely pursue these actions. Finally, Applicant notes that due to the remaining claims in relation to the amount left in the estate it will not receive all of its requested fees even if the Court should approve its Application. In what regard the following is to be noted.

From the figures presented to the Court, it is apparent that the Debtor's estate is administratively insolvent, i.e.: there clearly are insufficient funds remaining to pay all the administrative claimants if full, and therefore, the administrative claimants will be forced to accept whatever remains to be distributed. The amounts awarded to Applicant will thus affect the percentage of its recovery it will receive.

## IV. DISCUSSION

A. Fee Application - General Principles

     Applicant seeks a total of $113,627.06 in fees and costs for services rendered as counsel for the Trustee, allowable as an administrative expense pursuant to §§ 330 and 331.

     "The payment of attorneys who are appointed pursuant to 11 U.S.C. § 327 is governed by 11 U.S.C. § 330[.]" *Dery v. Cumberland Casualty & Surety Co. (In re 5900 Associates, Inc.)*, 468 F.3d 326, 329 (6th Cir. 2006). Section 330(a) permits a bankruptcy court to award, after notice and hearing, "(A) reasonable compensation for actual, necessary services rendered by . . . [an] attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(A) - (B). Section 330(a)(3) directs that when a bankruptcy court "determin[es] the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services[.]" In doing so a bankruptcy court is further directed to consider "all relevant factors," such as hours spent, the rates charged, and the necessity and benefit of the services at the time rendered. 11 U.S.C. § 330(a)(3)(A) - (C). A bankruptcy court is precluded from awarding compensation "for . . . unnecessary duplication of services[,]" "services that were not reasonably likely to benefit the debtor's estate[,]" or services that were not "necessary to the administration of the estate. § 330(a)(4)(A)(i) - (ii).

     "The burden of proof as to entitlement to and reasonableness of a fee request is upon the moving party." *In re Kieffer*, 306 B.R. 197, 206 (Bankr. N.D. Ohio 2004) (citation omitted). "A bankruptcy court is afforded broad discretion in determining attorney's fees." *Thomas v. Robinson (In re Robinson)*, 189 Fed. App'x 371, 373 (6th Cir. 2006). However, "'the bankruptcy court must expressly discuss the amounts that are not supported by the application and provide a reasoning to support the court's decision.'" *In re Williams*, 378 B.R. 811, 822 (Bankr. E.D. Mich. 2007) (Shefferly, J.) (quoting *In re Williams*, 357 B.R. 434, 438–39 (B.A.P. 6th Cir. 2007)). "On its own motion, the bankruptcy court may award compensation that is less than the amount of compensation requested." *Cupps & Garrison, LLC v. Rhiel (In re Two Gales, Inc.)*, 454 B.R. 427, 2011 WL 2714869, at *4 (B.A.P. 6th Cir. 2011) (citing 11 U.S.C. §§ 329(b), 330(a)(2)).

     "The Sixth Circuit Court of Appeals has directed that bankruptcy courts should use the lodestar method in determining reasonable attorney fees under § 330(a) of the Bankruptcy Code." *In re Williams*, 378 B.R. at 822 (citing *Boddy v. United States Bankruptcy Court ( In re Boddy)*, 950

6

F.2d 334, 337 (6th Cir.1991)). "The starting point in the lodestar analysis is to determine a reasonable hourly rate. . . . The next step in the analysis is to determine the lawyer's reasonable hours." *Id*. (citation omitted). The Creditors do not raise any challenge or objection related to the first step, the reasonableness of Applicant's hourly rates. Nonetheless, the Court has an obligation to "ask whether the rate charged for the service is reasonable in light of the complexity and importance of the task." *Boyd v. Engman*, 404 B.R. 467, 477 (W.D. Mich. 2009) (citation omitted). Applicant's rates range from $150-$355 per hour for attorneys and $65-$85 for paralegals. In this Court's view and its own experience in this district, those rates are reasonable. In addition, the Creditors do not claim that the services were not actually rendered. After a careful review of the Application, the Court also does not have any reason to question whether the services were actually rendered.

The focus of the Creditors' objection centers on the second step in the lodestar analysis, the reasonableness of the hours rendered by Applicant. The Creditors, as noted earlier, contest the overall reasonableness of the hours expended arguing the number of hours is excessive, unwarranted, and provided no benefit to the estate. As examples of a lack of benefit, the Creditors point to the KHN adversary proceeding and Stetson Litigation. Applicant seeks over $61,000 in fees and costs for services rendered in connection with those proceedings, which resulted in the Debtor's estate losing $5,000 in the KHN proceeding but obtaining a $5,000 allowed claim in the Stetson Chapter 13 case for a net benefit of $0.00 to the Debtor's estate. Applicant responds that the Creditors "consistently urged the Trustee to continue" the KHN litigation and that the filing of a Chapter 13 case by Mr. Stetson necessitated the additional adversary proceedings. At the September 30, 2010, Fee Application hearing, the Court asked the Creditors to identify specific portions of the fees and costs that were being contested. The Creditors stated that although they did not have an exact dollar figure they were contesting, they believed the circumstances warranted a global reduction of approximately $45,000. Mindful of the Court's "duty to independently examine the reasonableness of the requested fees[,']" *In re Williams*, 378 B.R. at 822, the Court must determine whether Applicant's services in each category were "reasonably likely to benefit the debtor's estate[,]" § 330(a)(4)(A)(i)(I).

7

For Applicant's hours to be reasonably expended, "at a minimum the attorney's time must relate to a service that is reasonably likely to benefit the estate or necessary to the administration of the bankruptcy case." *Boyd v. Engman*, 404 B.R. 467, 477 (W.D. Mich. 2009) (citing 11 U.S.C. § 330(a)(4) and *In re Holder*, 207 B.R. 574, 583 (Bankr. M.D. Tenn. 1997)). *Cf. Thomas v. Robinson (In re Robinson)*, 189 Fed. App'x 371, 374 (6th Cir. 2006) (citation omitted) ("In order for the services of a debtor's attorney to be 'necessary,' they must benefit the debtor's estate."). Although the benefit to the estate "need not be a direct economic benefit[,]" *In re Veltri Metal Products, Inc.*, 189 Fed. App'x 385, 389 (6th Cir. 2006) (citation omitted), "the majority of [c]ourts agree that the results obtained is a major factor in determining whether the services at issue bestowed a benefit upon the estate." *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 886 (Bankr. W.D. Ky. 1996). "[G]reat amounts of time and energy with little result require . . . greater scrutiny. The focus must be on the result achieved and the benefit obtained for the estate." *In re Cardinal Industries, Inc.*, 151 B.R. 843, 847 (Bankr. S.D. Ohio 1993) (citing *Cle–Ware Industries, Inc. v. Sokolsky (In the Matter of Cle–Ware Industries, Inc.)*, 493 F.2d 863, 868 (6th Cir.1974)). "[W]hen a professional's efforts have failed to produce a significant benefit, the task of proving the reasonableness of the fees to the Court becomes unsurprisingly more difficult." *In re Unitcast, Inc.*, 214 B.R. 992, 1009 (Bankr. N.D. Ohio 1997).

When evaluating the benefit to the estate, "courts objectively consider whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered. " *In re Value City Holdings, Inc.*, 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) (citation omitted). "The pertinent question is not whether the services performed by the professional conferred an actual benefit upon the estate; but whether, when viewed under the circumstances in existence at the time, the services were reasonably calculated to benefit the estate." *In re Kennedy Mfg.*, 331 B.R. 744, 748 (Bankr. N.D. Ohio 2005) (citation omitted). In making this determination, however, "[a] court should resist the temptation to engage in '20/20 hindsight,' and focus instead on facts known (or which should have been known) to the applicant at critical points during the pendency of the case." *In re Arnold*, 162 B.R. 775, 778 (Bankr. E.D. Mich. 1993) (citation omitted).

8

*1. General and Administrative fees*

The amount of $8,363.78 ($7,772.50 in fees and $591.28 in costs) is involved in this category. The main items Applicant includes in this category are for its services preparing ex parte applications to employ professionals, such as itself, to assist the Trustee and responding to inquiries from interested parties and creditors. However, "[t]he trustee's attorney is not entitled to professional compensation for performing the statutory duties imposed on the trustee by 11 U.S.C. § 704." *In re Butterbaugh*, 135 B.R. 507, 509 (Bankr. N.D. Ohio 1991) (citation omitted). "Allowing the trustee's counsel to be compensated for services which can and should be performed by the trustee not only depletes the estate unnecessarily, but violates the Code itself." *Id*. "Under this analysis, the professional skills of an attorney are required when there is an adversary proceeding or a contested motion that requires the trustee to appear and prosecute or defend, when an attorney is needed for a court appearance, or when other services are needed that require a law license." *In re Virissimo*, 354 B.R. 284, 290 (Bankr. D. Nev. 2006).

Many courts hold that "the preparation of an application for the employment of a professional is a duty generally performed by a trustee without the assistance of an attorney." *In re Virissimo*, 354 B.R. at 295. The Ninth Circuit Bankruptcy Appellate panel found that the "preparation of an application for employment of a professional is a duty *generally* performed by a trustee without the assistance of an attorney. This does not mean that preparation of an employment application is per se not compensable. It simply means, absent a showing by applicant to the contrary, routine employment applications remain a trustee duty." *Ferrette & Slater v. United States Trustee (In re Garcia)*, 335 B.R. 717, 726 (B.A.P. 9th Cir. 2005) (internal citation omitted). In fact, "with respect to applications for the hiring of attorneys on behalf of the estate" specifically, one court rejected the notion "that an attorney should be compensated for the drafting of an application for appointment when the attorney has yet to be appointed to assist the trustee. . . . If a trustee requires the services of an attorney to hire an attorney or an accountant, it is difficult to imagine many other activities the trustee can accomplish without the aid of a professional." *In re Gary Fairbanks, Inc.*, 111 B.R. 809, 812 (Bankr. N.D. Iowa 1990) (citation omitted). Moreover, the Court notes that at least two of the applications Applicant claims it filed were both signed and filed by either the professional or the Trustee. The Court's docket reflects that the January 11, 2007,

9

ex parte application to employ Waxenburg and Mueller, PLLC was actually filed and signed by the Trustee (docket number 292). Likewise, the accountant signed the October 25, 2007, First Application for Compensation and the docket reflects that the Trustee filed the application (docket number 421).

Furthermore, courts have denied requests for compensation by a trustee's counsel for time "entries relating to routine telephone calls and correspondence with information seekers." *In re Butterbaugh*, 135 B.R. at 509 (citation omitted). Applicant's services to the Trustee of "responding to the inquiries from" "parties in interest and creditors" plainly falls into this type of uncompensable service. The Court notes that while Applicant's Application requests for fees of $7,772.50 and costs of $591.28 in this category, it does not offer any summary of the number of hours specifically associated with the category. "The Court will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself." *In re Woodward East Project, Inc.,* 195 B.R. 372, 375 (Bankr. E.D. Mich. 1996) (Rhodes, J.) (internal quotes and citation omitted). The Court, therefore, has no option but to deny Applicant the fees and costs requested for services rendered preparing applications to employ professionals and responding to inquires, which were activities the Trustee either was statutorily required to handle or did not require the assistance of counsel.

*2. Asset Analysis and Recovery Services*

In the Asset Analysis and Recovery category, Applicant seeks fees of $33,129.50 and costs of $800.57. Applicant's services in this category focused primarily on negotiating a global settlement regarding secured claims asserted by the Creditors and Dr. Larkin in the Debtor's wine inventory. Another aspect of the negotiations was the June 4, 2007, Order Granting Motion for Authority to Compromise specifying how the Trustee would distribute the secured claims as well as ordering that the estate would retain $44,970.85 in deposited funds free of any claims by the Creditors. In addition, the Creditors, in return for compensation, also agreed to assist the Trustee in selling the Debtor's wine inventory and overseeing the day to day operations of the Debtor. The Trustee eventually sold the wine inventory at auction, which resulted in $315,582.68 being added to the Debtor's estate. Applicant also negotiated with the Creditors to obtain a credit bid for the

Debtor's real property that was significantly higher that the other bids received by the real estate broker. This resulted in an additional $43,666.08 being added to the Debtor's estate.

The central inquiry is whether Applicant services were "reasonably likely to benefit the estate or necessary to the administration of the bankruptcy case." *Boyd*, 404 B.R. at 477. It is clear that Applicant's services benefitted the Debtor's estate through its negotiations of the global settlement. The settlement resolved disputes over secured claims, thereby reducing the amount of claims on the estate, and obtained the assistance of the Creditors, the former owners of the Debtor, to assist in the day to day management of the Debtor for the Trustee. The Creditors also assisted in inventorying the wine in preparation for the auction. The wine inventory was the Debtor's largest asset and the auction resulted in over $315,000 being realized for the estate. The Creditors' efforts, therefore, not only benefitted the estate but aided in the administration of the estate. Therefore, the Court will allow Applicant's requested fees of $33,129.50 and costs of $800.57 for this category.

### 3. KHN adversary proceeding and the Stetson Litigation Services

Applicant seeks fees of $27,968.50 and costs of $800.57 for services rendered in connection with the KHN adversary proceeding along with fees of $31,507.00 and costs of $800.57 related to the Stetson Litigation. The Court address these two categories jointly because these are the categories the Creditors specifically argue yielded no benefit the Debtor's estate. As noted earlier, the KHN adversary proceeding resulted in the Debtor's estate having to return $5,000 to KHN and the Stetson Litigation yielded a $5,000 allowed claim for the Debtor's estate in Mr. Stetson bankruptcy case. Applicant responds to the Creditors' contentions arguing that the Creditors "urged the Trustee to pursue the actions against KHN and Joseph Stetson." At the March 24, 2011, hearing on the Application and Surcharge Motion, Applicant further argued that the Creditors never informed Applicant that they thought the KHN adversary proceeding was unwarranted. Applicant claimed at the hearing that if it knew that information it would not have initiated the action against KHN. Regarding the Stetson litigation, and in particular the pick-up truck at issue therein, Applicant stated at the March 24 hearing that the truck was something the Creditors were "very interested in," "asked" Applicant "to proceed," and "continually and repeatedly asked the Trustee" about the truck. Applicant further stated that the Stetson litigation resulted in the recovery of some portion of the Debtor's wine inventory that Mr. Stetson possessed.

11

As is noted in other fee application cases, "[t]he issue in this case. . . is whether [Applicant] has shown that the services it provided were of a quality and quantity that would entitle it to the compensation requested under a lodestar analysis, considering the likelihood of the result obtained and the time expended." *In re Unitcast*, 214 B.R. at 1008. Here the primary inquiry is the benefit to the Debtor's estate from Applicant's services. The "benefit to the estate (or success of the endeavors) is always a primary focus of the analysis[.]" *In re Cardinal Industries, Inc.*, 151 B.R. at 847. Applicant's services totaling $61,076.64 resulted in a net benefit of $0.00 to the Debtor's estate. Although there need not be an economic benefit, "[i]t is readily apparent that if the legal fees exceed the recovery, the estate is not benefitted." *In re Strand*, 375 F.3d 854, 861 (9th Cir. 2004).

Furthermore, courts have recognized that counsel for the trustee has a fiduciary duty to realistically weigh the maximum possible success of any litigation against the costs to be incurred pursuing the litigation. "A lawyer hired by a trustee in bankruptcy to do legal work for the estate, like the trustee himself, is a fiduciary of the estate." *In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir.1995). "The attorney, in his or her fiduciary capacity, bears not only a duty to conserve the estate's net assets, but to 'maximize the value of the estate . . . .'" *In re Allied Computer*, 202 B.R.at 887 (quoting *In re Taxman*, 49 F.3d at 315). "A trustee and his attorney must undertake the same analysis that attorneys make in all types of cases to determine whether the potential costs and risks of litigation are justified ." *In re Minich*, 386 B.R. 723, 728 (Bankr. C.D. Ill. 2008). And this "analysis, balancing costs versus benefits, must be undertaken at the time the services are rendered." *In re Williams*, 378 B.R. at 826. "A lawyer must consider the amount in dispute and discount that by the likelihood of success in order to properly evaluate the worth of litigation, and then owes a professional duty to the client to recommend that no action be commenced if the cost of the battle exceeds the value of the litigation." *In re Arnold*, 162 B.R. at 779 (citation omitted).

Courts also routinely find that this fiduciary duty requires counsel for a trustee to discontinue litigation when it becomes apparent that the fees charged will outpace the maximum possible recovery. "This duty obligates the lawyer for the estate to abandon litigation once it becomes reasonably obvious that the cost of pursuing litigation over a particular matter is out of sync with the value of the asset sought to be recovered." *In re Allied Computer*, 202 B.R at 887. "Once it becomes reasonably obvious that the prospective costs of commencing or continuing litigation will

12

exceed any benefit to the estate, the attorney is duty bound to abandon the claim." *In re Keene Corp.*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997) (citing *In re Taxman*, 49 F.3d at 315; *In re Allied Computer*, 202 B.R. at 887). The "reasonably obvious" standard is objective and asks, "did a time come when a reasonable lawyer in [the counsel's] position would have abandoned the suit?" *In re Taxman*, 49 F.3d at 315. In short, counsel for a trustee is only justified in pursuing litigation "only until it [becomes] reasonably obvious that further litigation would cost more that it was likely to bring into the estate." *In re Eckert*, 414 B.R. 404, 411 (Bankr. N.D. Ill. 2009).

In the facts and circumstances of this case, the maximum possible recovery from the KHN litigation, based on the complaint filed in that proceeding, was approximately $30,000 (AP No. 06-5828). Yet, Applicant expended nearly $28,000 in an attempt to recoup the $30,000 for the estate, and actually ended up losing $5,000. Whether from an initial cost-benefit analysis or at some point during the litigation process, a reasonable cost-benefit analysis at some point or points would have indicated that its fees and costs were quickly rising to a level very near the maximum possible recovery. "Once it becomes reasonably obvious that the prospective costs of commencing or continuing litigation will exceed any benefit to the estate, the attorney is duty bound to abandon the claim." *In re Keene Corp.*, 205 B.R. at 696. In this situation, Applicant should have considered either abandoning the claim or attempting to settle it. "While there is no directive mandating that counsel must achieve a result that is 100% successful in order to be awarded 100% of his or her fees, counsel for the estate does bear a fiduciary duty to the estate which requires counsel to exercise a certain degree of judgment in deciding what matters of litigation to pursue." *In re Allied Computer*, 202 B.R. at 886.

As for the Stetson Litigation, the complaint there sought to recover alleged fraudulent conveyances and the turnover of the pick-up truck or its value. As stated in that complaint, the Trustee sought recovery of cash payments with of $2,055.06 or the truck's value of $4,500 (AP 06-6238, ¶¶ 11, 14, 20). Against a maximum possible recovery of only $4,500 Applicant rendered services in excess of $31,000. When litigation has a known maximum recovery, courts have held that a trustee's counsel abuses its discretion rendering services significantly in excess of that amount. *In re Taxman*, 49 F.3d at 314-15. ("abuse of discretion" to render services totaling $32,000 in a preference action case worth at most $33,000 because "the action could not yield a benefit

13

commensurate with the unavoidable expenses of the action"). Similarly, here Applicant should have exercised critical, independent professional judgment, either initially or at some point during the proceedings, and refrained from pursuing the various Stetson matters given that a predictable result would realize that, at most, it could recover at most only $4,500 for the Debtor's estate.

There was some evidentiary indication that Applicant was so aggressively pursuing the adversary proceedings at the urging of the Creditors, thus possibly implying that Trustee or Applicant, or both, may not have been exercising independent, professional judgment as opposed to succumbing to pressure from creditors. "Many attorneys have had to tell clients that a case—albeit a solid case on the law and facts—should not be pursued because the potential costs exceed any reasonably-expected recovery. Trustees must have that same heart-to-heart talk with their attorneys—or themselves—before litigation is undertaken on behalf of a bankruptcy estate." *In re Minich*, 386 B.R. at 728-29. Courts have "reject[ed] any suggestion that [a law firm] should be awarded all of its fees and costs simply because it was only doing what its client wanted to do." *In re Williams*, 378 B.R. at 827 (in the context of a fee application by counsel for a Chapter 13 debtor). "Just because a client wants to embark on a course of action does not mean that the lawyer is obligated to assist the client in pursuing that course of action if it is inconsistent with the exercise of independent professional judgment by the lawyer." *Id*. That could apply here to the extent that Applicant felt pressured by the Trustee to continue, "if the trustee insists on pursuing collection efforts in a manner which is not cost-effective, then counsel should seek to withdraw or, at least, recommend that the client secure a second legal opinion." *In re Strand*, 375 at 859. Applicant is "not a wind-up toy set in motion by the trustee." *In re Taxman*, 49 F.3d at 314. Rather, Applicant "had an independent fiduciary duty to the estate.

Even if the fees and costs did not significantly exceed the reasonably obvious maximum recoveries in these two categories, Applicant's Application does not evidence any "billing judgment." "Counsel for a chapter 7 trustee are expected to exercise the same manner and type of 'billing judgment' that they would exercise for private clients." *In re Kusler*, 224 B.R. 180, 185 (Bankr. N.D. Okla. 1998) (citing *In re Crawford Hardware, Inc.*, 82 B.R. 885, 888 (Bankr. S.D. Ohio 1987)). *See also In re Eckert*, 414 B.R. at 410(citation omitted) ("[A]pplicants should exercise good faith 'billing judgment.' Reasonable time spent does not necessarily include all time actually

14

expended."). "Billing judgment" is "the common practice of reducing fees where the total amount of hours billed would be unreasonable in relation to the services performed." *In re Holder*, 207 B.R. 574, 582 (Bankr. M.D. Tenn. 1997). "'Outside the sphere of bankruptcy, the prudent attorney will often 'writeoff' some of the hours actually expended in an effort to bring the bill in line with the economic value actually produced by his or her services.'" *In re Allied Computer*, 202 B.R. at 883 (citation omitted). Courts have stated that "'billing judgment is an absolute requirement of fee applications in bankruptcy.'" *In re Vu*, 366 B.R. 511, 520 (D. Md. 2007) (citation omitted). The statutory language mandates taking into account "all relevant factors," thus including, but not limited to, those specifically enumerated, when determining reasonable compensation. The Michigan Rules of Professional Conduct specify taking into account as one of the factors to be used in determining the reasonableness of a fee "the amounts involved and the results obtained." The so-called *Johnson* factors included that same language, and by inference, such is by nature part of the specific statutorily mentioned factors requiring an inquiry into whether the services were beneficial at the time they were rendered and were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed. Coupled with the indicated considerations of "billing judgment," one comes to the necessary conclusion as respects this portion of the application that the amounts sought need to be drastically reduced, primarily because the amounts involved and results factors should here predominate in the fee amount conclusion. The net recovery of the two actions was virtually zero. That does not mean that no fees should be awarded. What should be awarded, as to these particular items, should be a reasonable amount that reflects work done up to the point where the Court believes it should have been clear that these matters should no longer be so zealously pursued and they should be brought to a close in some appropriate manner. The Court's conclusion is that as that, as respects the KHN Adversary Proceedings, the fee award should be $10,000 and, as respects the Stetson Adversary Proceeding, it should be $7,500. The sought costs will be awarded in full.

*4. Other Adversary Proceedings Services*

15

In this final category, Applicant fees of $9,456.00 and costs of $800.57 for its services related to the various preference actions.  As noted earlier, Applicant endeavored to return of a total of $132,227.43 to the Debtor's estate through these actions.   Applicant's services resulted in obtaining a total of $42,307 being recouped for the benefit of the Debtor's estate.  "[T]here is no directive mandating that counsel must achieve a result that is 100% successful in order to be awarded 100% of his or her fees[.]" *In re Allied Computer*, 202 B.R at 886.  Applicant's services in this category clearly benefitted the Debtor's estate and were necessary to the administration of the case.  Moreover, unlike the KHN and Stetson matters, the fees and costs never remotely threatened to come close to, let alone exceed, the maximum possible recovery.  Nor does the Court view the hours expended excessive or unreasonable.  Thus, the Court will grant Applicant's Application to the extent it seeks fees of $9,456.00 and costs of $800.57 for services rendered in this category.

In summary, the Court acknowledges the "inherent tension, but not a proscribed conflict, between the extant system of compensation for professional persons who seek fees from the estate for their services and the economic interests of other creditors and parties in interest who occupy a lower rung on the priority ladder set by 11 U.S.C. § 726." *In re Eckert*, 414 B.R. at 413.  As other courts have noted, "Perhaps the most difficult area for a court to review in awarding fees concerns to what extent the results obtained should be used to modify an award of fees particularly in cases where compensation is sought for attorney fees related to totally unsuccessful projects." *In re Atwell*, 148 B.R. 483, 493 (Bankr. W.D. Ky. 1993).  The Court therefore grants Applicant's First and Final Fee Application in the amount of $60,085.50 in fees and $3,793.56 in costs, but denies the remaining fees of $49,748.

B. Surcharge Motion

The Trustee seeks "a surcharge[,  pursuant to 11 U.S.C. § 506(c),] in the amount of $21,103.02 for the reasonable and necessary costs of preserving, recovering, and disposing of the property securing the claims of" the Creditors.  (Trustee's Surcharge Motion, p. 1, ¶ 4).  The $21,103.02 is exactly what is available to be paid to secured creditors from what remains for

distribution from the Debtor's estate, after deducting the amounts recovered by the Trustee in preference actions and the surcharge previously agreed to by the Creditors.

The Trustee focuses on what she characterizes as the Creditors' continual and consistent urging for the Trustee to pursue the various adversary proceedings against KHN and the Stetsons. (Surcharge Motion, p. 4, ¶¶ 21, 23). The Trustee's essential argument is that the Creditors "knew or should have known that a further surcharge was necessary for the Trustee and counsel to pursue" the KHN adversary proceeding and Stetson Litigation, "whether the surcharge came from the recoveries in those [proceedings] or the other assets of the Estate." (Surcharge Motion, p. 8, ¶ 44; Trustee's Reply, p. 4, ¶ 20). To support the motion, the Trustee relies on *Daniel v. AMCI, Inc. (In re Ferncrest)*, 66 F.3d 778, 782 (6th Cir. 1995) (citation omitted), for the rule that a surcharge under § 506(c) is proper "where the claimant establishes that the secured party directly or impliedly consented or caused the expense." The Trustee contends its actions were reasonable and necessary.

The Creditors object to the surcharge contending that while they may have been involved in the KHN proceedings and "encouraged" the Stetson litigation, they did not have the authority to direct the Trustee's actions. (Creditors' Response to Surcharge Motion, p. 2, ¶¶ 21-23). Further, the Creditors argued at the March 24, 2011, hearing that *In re Ferncrest* was distinguishable on the grounds that in that case the services directly benefitted the creditor. They argue that here, in contrast to *In re Ferncrest*, there was no benefit and the Trustee is merely trying to surcharge them personally for the fees incurred in the adversary proceedings.

Section § 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of *preserving, or disposing of*, such property to the extent of any benefit to the holder of such claim." (emphasis added). "Section 506(c) is the statutory basis for preventing a windfall to a secured creditor." *In re Computer Systems*, 446 B.R. 837, 843 (Bankr. N.D. Ohio 2011) (citing *In re Foremost Manufacturing Company*, 137 F.3d 919, 923 (6th Cir.1998)).

"[I]n order to prevail on a § 506(c) claim, the claimant bears the burden of proving that the costs were reasonable, necessary, and a benefit to the secured party." *In re Ferncrest*, 66 F.3d at 782 (citation omitted). *Accord Boyd v. Dock's Corner Assocs. (In Great Northern Forest Products, Inc.)*, 135 B.R. 46, 70 (Bankr. W.D. Mich. 1991) ("Three elements must be present in order to

17

surcharge a secured creditor with administrative expenses pursuant to § 506(c): (1) the expense must be necessary for the preservation or disposal of the collateral, (2) the amount of the expense must be reasonable, and (3) the secured creditor must benefit from the expense."). "In the alternative, recovery may be had where the claimant establishes that the secured party directly or impliedly consented or caused the expense." *In re Ferncrest*, 66 F.3d at 782 (citations omitted); *see also In re Glen Eden Hosp., Inc.*, 202 B.R. 589, 590 (Bankr. E.D. Mich. 1995) (citations omitted) ("A party seeking to surcharge has the burden of proving, by a preponderance of the evidence, either a direct quantifiable benefit to the secured creditor which enabled the secured creditor to realize as much or more than it would have had it enforced its security interest outside of bankruptcy, or that the creditor consented directly or by implication.") .

"While a court may imply a secured party's consent from the circumstances of a case, a finding of consent 'is not to be lightly inferred.'" *In re Ferncrest*, 66 F.3d at 782 (quoting *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservices Corp.)*, 739 F.2d 73, 77 (2d Cir. 1984)) (other citation omitted). "Inferences of consent must not be hastily drawn." *Hartford Fire Ins. Co. v. Norwest Bank Minn., N.A. (In re Lockwood Corp.)*, 223 B.R. 170, 175 n. 6 (B.A.P. 8th Cir. 1998). "Furthermore, consent should not be inferred merely from the fact that the secured party cooperated with the debtor." *Id.* (citing *Flagstaff*, 739 F.2d at 77). *See also In re Evanston Beauty Supply, Inc.*, 136 B.R. 177 (Bankr. N.D. Ill. 1992) (citation omitted) ("'Mere cooperation with a debtor . . . is insufficient.'"); *In re By-Rite Oil Co.*, 87 B.R. 905, 921 (Bankr. E.D. Mich. 1988) (rejecting the argument that consent could be inferred from the creditor's "knowledge and cooperation with the work of the unsecured creditor's committee").

The Court finds that the Trustee has not proven express or implied consent. The Court understands the Trustee's motion as resting primarily on this alternative theory. The Trustee's argument is that the Creditors urged or encouraged the various proceedings. But as the case law set forth above clearly mandates, "consent should not be inferred merely from the fact that the secured party cooperated with the debtor." *In re Ferncrest*, 66 F.3d at 782. Nor are inferences of consent to be lightly or hastily made. *Id.*; *In re Lockwood Corp.*, 223 B.R. at 175 n. 6. The Court agrees with the Creditors that despite any encouragement or cooperation they might have given the Trustee, the Trustee ultimately is the statutorily responsible for deciding what actions to pursue. "Just

18

because a client wants to embark on a course of action does not mean that the lawyer is obligated to assist the client in pursuing that course of action if it is inconsistent with the exercise of independent professional judgment by the lawyer." *In re Williams*, 378 B.R. at 827. This is even more the case when the context is a secured creditor allegedly urging or insisting on a course of action. Moreover, the basis for the finding of consent in *In re Ferncrest* was the written consent executed by the secured creditor's predecessor in interest. *In re Ferncrest*, 66 F.3d at 782 (creditor "did more than merely 'cooperate'" in light of written stipulation). The Creditors' cooperation with the Trustee is an insufficient basis for surcharging the $21,103.02 remaining from the sale of the Debtor's wine inventory.

In addition, the Trustee has not met all three elements required under § 506(c) where consent is absent. First, the Court finds a lack of necessity related to the collateral sought to be surcharged. In order for the Creditors to be surcharged, the Trustee must prove "[t]he cost was necessary in *preserving or disposing of the collateral*[.]" *In re Daily Medical Equipment, Inc.*, 150 B.R. 205, 208 (Bankr. N.D. Ohio 1992) (citations omitted; emphasis added). The Court can find no connection between the Creditors' collateral – the Debtor's wine inventory – and the focus or purpose of the KHN adversary proceeding and the Stetson litigation. The KHN proceeding sought to recovery breach of contract damages from KHN. The complaint in that proceeding is devoid of any reference to recovering any of the wine inventory. Similarly, the Stetson Litigation complaint did not seek to recover any of the wine inventory but instead sought the payments made towards the truck or recovery of the truck itself. Because the KHN and Stetson matters simply did not involve the recovery, preservation, or liquidation of the Debtor's wine inventory, the Court is not convinced it was necessary for the Trustee to pursue these matters.

Second, the Trustee failed to show any benefit to the Creditors. "The benefit element is primary in importance as well as the most difficult to prove." *In re Daily Medical Equipment, Inc.*, 150 B.R. at 208. To meet its burden on this element the Trustee "must establish . . . that the expenses result in a direct quantifiable benefit to the secured creditor which enabled him to realize as much or more than he would have by enforcing his own security[.]" *In re Wyckoff*, 52 B.R. 164, 167 (Bankr. W.D. Mich. 1985). Neither the KHN adversary proceeding or the Stetson litigation "enabled the secured creditor to realize as much or more than it would have had it enforced its

19

security interest outside of bankruptcy[.]" *In re Glen Eden Hosp., Inc.*, 202 B.R. at 590. Quite the contrary, here the Trustee's actions resulted in a net benefit of $0.00 for the Debtor's estate while incurring fees of $27,968.50 and $31,507.00. Under the traditional 'benefits test' of § 506(c), the Trustee has failed to show any either the necessity of the proceedings or a direct and quantifiable benefit to the Creditors. Therefore, the Court denies the Trustee's motion to surcharge pursuant to § 506(c).

## C. Sanctions Motion

The final matter before the Court is the Creditors' Sanctions motion. The Creditors argue the Trustee's Surcharge Motion violated the parties' stipulation and Order entered by the Court on June 4, 2007. Specifically, the Creditors argue the Surcharge Motion violated the June 4, 2007, Order's language that "the Trustee will agree to forego further legal actions challenging the validity of the McLeans' interest in the Estate." The Creditors further argue that the Trustee's Surcharge Motion lacks a basis in law or a non-frivolous argument that their knowledge, encouragement, or assistance of the Trustee's actions warranted a surcharge.

The Trustee's objects to the imposition of sanctions arguing, in essence, that the Surcharge Motion had a basis in law and was not frivolous in light of the fact that this Court took the matter under advisement. The Trustee also asserts that the Creditors waived any argument for sanctions by failing to raise the arguments at the hearing on the Surcharge Motion.

"Generally, an attorney is subject to Rule 9011 sanctions if, after the movant makes a reasonable inquiry prior to filing, the motion was not well grounded in fact or warranted by existing law or a good faith argument for the extension or modification, or reversal of existing law." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 481 (6th Cir. 1996). "[T]he test for imposing Rule 9011 sanctions is whether the individual's conduct was reasonable under the circumstances." *Id*. (citation omitted). "The attorney's conduct must be tested by an objective standard of reasonableness" and "of course is a fact-oriented inquiry." *Silverman v. Mutual Trust Life Ins. Co. (In re Big Rapids Mall Associates)*, 98 F.3d 926, 930 (6th Cir. 1996) (citation omitted). "In applying this test, the bankruptcy court 'is not to use the benefit of hindsight but should test the signer's conduct by inquiring what was reasonable to believe at the time the motion was

submitted.'" *In re Downs*, 103 F.3d at 481 (quoting *McGhee v. Sanilac County*, 934 F.2d 89, 93 (6th Cir. 1991)).

"A court is given discretion in deciding whether it is appropriate to impose sanctions[.]" *Heavrin v. Schilling (In re Triple S Restaurants, Inc.)*, 342 B.R. 508, 513 (Bankr. W.D. Ky. 2006). However, "the imposition of sanctions is a very serious matter." *In re Shelton*, 428 B.R. 457, 460 (Bankr. N.D. Ohio 2010) (citation omitted). "[A]ny doubt should be resolved in favor of the party against whom sanctions are sought." *In re Shelton*, 428 B.R. at 460. "The burden of proof is on the moving party to prove that Bankruptcy Rule 9011 sanctions are warranted." *In re Weaver*, 307 B.R. 834, 841 (Bankr. S.D. Miss. 2002) (citation omitted); *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999) (moving party "has the burden of proof on the appropriateness of sanctions").

The Court does not agree that sanctions are warranted given the facts and circumstances of this case. The Trustee's Surcharge Motion was premised primarily on the theory of implied consent by the Creditors. The Creditors in fact acknowledged that they encouraged to some extent or were heavily involved in the Trustee's pursuit of the proceedings. "Courts have concluded that a legal position is unwarranted – under Rule 9011 – only if it has no chance of success under existing precedent." *In re Dunn*, 320 B.R. 161, 164 (Bankr. S.D. Ohio 2004) (citations omitted). That the Court found that the existing law was not on the Trustee's side based on the facts and circumstances in this case does not necessarily mean that the Trustee had no chance of success. Moreover, the Court cannot say that "an attorney would recognize that it is patently clear that the [Trustee's] position has absolutely no chance of success." *In re HBA East, Inc.*, 101 B.R. 411, 415 (Bankr. E.D.N.Y. 1989). Courts have declined to find a motion sanctionable where the court was not able to say from the bench that the motion was frivolous. *See, e.g.*, *In re Brooks Sand and Gravel, LLC*, No. 06–3158, 2007 WL 1193383, at *1 (Bankr. W.D. Ky. Apr. 23, 2007 ('This was not a situation that was so clear cut that the Court was willing to summarily dismiss the Complaint from the bench as frivolous."). Resolving any doubt against the Creditors, *In re Shelton*, 428 B.R. at 460, the Court finds that the Trustee's position "was based on a plausible" – if ultimately unsuccessful – "view of the law[.]" *Berman v. Bill Fields Trucking (In re HNRC Dissolution Co.)*, 330 B.R. 555, 557 (Bankr. E.D. Ky. 2005) (citations omitted). The Creditors' Sanctions Motion is therefore denied.

## III. CONCLUSIONS

The Court will allow fees and costs in the total amount of $63,879.06, but disallows the remainder of the fees ($49,748) requested in the Application[1]. The Court also denies the Trustee's Surcharge Motion. Finally, the Court denies the Creditors' motion for sanctions.

The Court will enter an appropriate order.

```
Signed on December 14, 2011
                                    /s/ Walter Shapero
                              Walter Shapero
                              United States Bankruptcy Judge
```

---

[1] Total fees and expenses sought by Applicant:

```
                                            Fees    $109,833.50
                                            Costs   $3,793.56
                                                    -----------------
                                                    $113,627.06
```

| CATEGORY | FEES SOUGHT | FEES AWARDED | COSTS SOUGHT | COSTS AWARDED |
|----------|-------------|--------------|--------------|---------------|
| General & Administrative | $7,772.50 | $0 | $591.28 | $591.28 |
| Asset Analysis & Recovery | $33,129.50 | $33,129.50 | $800.57 | $800.57 |
| KHN Adv. Pro. | $27,968.50 | $10,000.00 | $800.57 | $800.57 |
| Stetson Litigation | $31,507.00 | $7,500.00 | $800.57 | $800.57 |
| Other Adv. Pros. | $9,456.00 | $9,456 | $800.57 | $800.57 |
| **TOTALS** | **$109,833,50** | **$60,085.50** | **$3,793.56** | **$3,793.56** |